The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

James Leroy AKIN,
Defendant–Appellee.

No. 88SA265.

Supreme Court of Colorado,
En Banc.

Nov. 13, 1989.

As Modified on Denial of Rehearing
Dec. 18, 1989.

James F. Smith, Dist. Atty., and Steven L. Bernard, Chief Trial Deputy, Brighton, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, and Judy Fried, Deputy State Public Defender, Denver, for defendant-appellee.

Justice VOLLACK delivered the Opinion of the Court.

The People appeal the district court's order denying Loft House Community Correctional Facility's (Loft House) Complaint and Request for Transfer of the defendant James Leroy Akin (Akin). The court ruled that the People failed to sustain their burden of proof to terminate Akin's placement at Loft House, and ordered him returned to the facility. We reverse.

I.

The People charged Akin under section 18–3–405, 8B C.R.S. (1986), with the class 3 felony of sexual assault on a child. Pursuant to an agreement with the prosecution, Akin pled guilty under the same section to the class 4 felony of sexual assault on a child. The Adams County Probation Department referred Akin's case to the Adams County Community Corrections Board (the Board). The Board's Screening Committee evaluated Akin and agreed, subject to court-ordered conditions, to accept his placement in Loft House, a community corrections facility under contract to the Board.[1] The district court, on July 1, 1987, sentenced Akin to Loft House for eight years, imposing the conditions requested by the Board.

On July 1, 1988, Loft House filed a Complaint and Request for Transfer in the district court, alleging Akin's violation of rules of the facility and violent behavior. Loft House requested he be terminated from the program and be transferred to the Department of Corrections. The super-

---

1. The Board's acceptance was conditioned on the district court including the following conditions in Akin's sentence:
   1. That he maintain full-time employment.
   2. That he seek vocational training.
   3. That he continue mental health treatment.

4. That he abide by the treatment plan created by Adams County Social Services.
5. That he attend stress management counseling.
6. That he submit urine screens to Loft House personnel at their request.

vising authority certified that Loft House had cause to believe Akin associated without authorization with a person who was on parole, lied about his whereabouts while signed out of the facility, failed to schedule an appointment for mental health counseling, and failed to attend scheduled mental health counseling sessions. Finally, Akin was involved in a physical fight with another client in the facility which caused physical injury to the other client.

On July 19, 1988, the district court held a hearing on Loft House's Complaint and Request for Transfer. At the hearing the prosecution called a counselor at Loft House as its only witness. On cross-examination the counselor admitted that Akin was in full compliance with the conditions of placement established at the time Akin was sentenced to Loft House. The counselor also admitted that Akin's participation in the fight was the incident that precipitated Loft House's Complaint and Request for Transfer. The district court found that the People failed to prove that Akin caused the fight or that Akin's rule violations were sufficient to terminate him from the program. The court, over the objection of the People, dismissed the Complaint and ordered Akin returned to Loft House.

On July 29, 1988, at the request of Loft House's executive director, the Board held a special session to consider Akin's continued placement at Loft House. The Board voted to reject Akin's continued placement at Loft House. In reaching its decision the Board considered the risk of harm to the staff and other clients of Loft House, the effect of Akin's presence on client management and program stability, and the conduct of Akin during his placement at Loft House. On August 2, 1988, the Board filed a letter with the district court rejecting Akin's placement at Loft House under section 17–27–103(3), 8A C.R.S. (1986).

## II.

Community corrections programs provide a judge with a sentencing alternative that is more severe than probation, but not as harsh as incarceration. *People ex rel. VanMeveren v. District Court*, 195 Colo. 34, 575 P.2d 4 (1978). The objective of these programs is to provide the minimum confinement necessary to supervise an offender while the offender is gradually reintegrated into society. *Wilson v. People*, 747 P.2d 638 (Colo.1987). Community corrections programs utilize a variety of means, including halfway houses and work release programs, to achieve their objectives. *Id.* at 640.

Section 17–27–103(2) authorizes a county to establish a corrections board to govern that county's community correctional facilities and programs. The corrections board may establish standards of operation and develop procedures for screening individuals for potential placement in one of its community correctional facilities or programs. *Wilson*, 747 P.2d at 640; § 17–27–103(3).[2] The corrections board is authorized "to accept, reject, or reject after acceptance the placement of any offender in its community correctional facility or program." § 17–27–103(3).

An offender may be sentenced directly to a community corrections facility. § 17–27–105(1)(a), 8A C.R.S. (1986). "Alternatively, an offender may be placed in a community corrections program as a condition of probation, § 16–11–204(2)(c), 8A C.R.S. (1986), or may be transferred to the program by the department of corrections pursuant to contractual authorization, § 17–27–106(4)(a), 8A C.R.S. (1986)." *Wilson*, 747 P.2d at 640.

## III.

The question presented is whether these statutory provisions prohibit the district

**2.** In this opinion we will cite to the version of § 17–27–103(3) in effect at the time of the resentencing hearing since that is the applicable law. In 1989, § 17–27–103(3) was amended by the addition of the following sentence: "The sentencing court is not required to provide the offender with an evidentiary hearing prior to resentencing." § 17–27–103(3), 8A C.R.S. (1989 Supp.).

court from returning an offender[3] to the community corrections facility after his rejection from that facility. The People argue that section 17–27–103(3) gives a corrections board the authority "to ... reject after acceptance the placement of any offender in its community correctional facility." This language is plain and unambiguous. The legislature gave corrections boards the power to reject an offender even after an offender has been accepted into one of the corrections board's programs or facilities.

In *Wilson v. People,* 747 P.2d 638, 642 (Colo.1987), we held that section 17–27–103(3) gave the corrections board the discretion to reject an offender from placement in one of its facilities regardless of the outcome of a resentencing hearing held pursuant to section 17–27–114(2), 8A C.R.S. (1986).[4] The sentencing court's only option is to resentence the offender, by adopting any alternative sentence that might originally have been imposed, including a sentence to *another* community corrections facility that agrees to accept the offender. *Wilson,* 747 P.2d at 641.

Once the corrections board has made a decision to reject an offender accepted in the program under section 17–27–103(3), as in this case, the trial court is powerless to dismiss the termination for lack of evidence and order the offender returned to the same community corrections facility where he originally had been placed. *Wilson,* 747 P.2d at 642.

We reverse the district court and remand for resentencing consistent with this opinion.

---

3. An "offender" is an individual who may be placed in a community corrections facility or program. The statutory definition of "offender" is found in § 17–27–102(4), 8A C.R.S. (1989 Supp.). Since Akin's status as an offender is not at issue, we do not address the statutory definition.

4. In this opinion we will cite to the version of § 17–27–114 in effect at the time of the resentencing hearing since that is the applicable law. In 1989, § 17–27–114(2) was amended by the addition of the following sentence: "The sentencing court is not required to provide the offender with an evidentiary hearing prior to resentencing." § 17–27–114, 8A C.R.S. (1989 Supp.).