**The PEOPLE of the State of Colorado,
Plaintiff–Appellee,**

v.

**Barry D. WILHITE, Defendant–
Appellant.**

**No. 91SA58.**

Supreme Court of Colorado,
En Banc.

Oct. 7, 1991.

Gale A. Norton, Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., Timothy R. Twining, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Douglas D. Barnes, Victor I. Reyes, Deputy State Public Defenders, Pueblo, for defendant-appellant.

Justice MULLARKEY delivered the Opinion of the Court.

The defendant, Barry D. Wilhite, appeals the trial court's order denying him an evidentiary hearing to challenge his rejection by a privately-operated community corrections facility. He argues that sections 17–27–103(3) and 17–27–114(2), 8A C.R.S. (1990 Supp.), are unconstitutional because both statutes provide that a "sentencing court is not required to provide the offender with an evidentiary hearing prior to resentencing." We affirm.[1]

---

**1.** § 13–4–102(1)(b), 6A C.R.S. (1987), gives this court jurisdiction over appeals when the constitutionality of a statute is at issue.

## I.

Wilhite entered a plea of guilty to the offense of criminal attempt to possess a Schedule II controlled substance in violation of sections 18–2–101 and 18–18–105, 8B C.R.S. (1986), a class 4 felony. The plea agreement provided that the defendant would be sentenced to community corrections for a term not to exceed five years, with a one-year minimum residential period. On October 13, 1989, the sentencing court accepted the plea agreement and sentenced the defendant to a Pueblo-based community corrections facility operated by Rocky Mountain Community Corrections, Inc. (Rocky Mountain), a private nongovernmental agency. Rocky Mountain notified the court on November 21, 1989, that it was revoking its acceptance of the defendant because the defendant had tested positive for cocaine use under three urinalysis screenings taken during the month of October. The defendant was transferred to Pueblo County Jail pending a resentencing hearing by the court.

On November 22, 1989, the defendant moved for an evidentiary hearing. He argued that the section of the statute allowing a court to resentence an offender without an evidentiary hearing was unconstitutional. A hearing was held on the defendant's motion on December 6, 1989. The trial court rejected the defendant's argument, finding that the due process clause was not triggered since the defendant had neither a constitutionally recognized due process right to an evidentiary hearing nor a state created liberty interest. In addition, the court found that with respect to the equal protection argument, there is no evidence of different treatment among all diversional inmates, and the fact that there is different treatment between transitional and diversional inmates does not create additional rights for diversional inmates. The trial court issued a written order denying the motions, and on December 18, 1989, the defendant was resentenced to three years in the custody of the Department of Corrections. The defendant now appeals the trial court ruling.

## II.

Before considering Wilhite's argument, we will describe briefly community corrections placements and the statutory amendments now before us. Community corrections is a comprehensive plan which provides state funds to local governmental and private agencies for both the diversion and reintegration of offenders from correctional institutions. The Colorado Division of Criminal Justice, *Community Corrections in Colorado: 1986* (July 18, 1986) at 1. "Community corrections programs provide 'the sentencing judge with a broader range of alternatives and with a sentencing medium that is more severe than probation, but not as harsh as incarceration.' " *Wilson v. People*, 747 P.2d 638, 639 (Colo.1987) (*quoting People ex rel. VanMeveren v. District Court*, 195 Colo. 34, 575 P.2d 4, 6 (1978)).

There are three methods by which an offender may be placed in community corrections. The first method is through direct placement by the sentencing court, as was done in the present case pursuant to section 17–27–105(1)(a), 8A C.R.S. (1986). Second, an offender may be placed into a community corrections facility by transitional placement, section 17–27–106(4)(a), 8A C.R.S. (1986). This occurs when an inmate, who has been incarcerated in a Department of Corrections facility, exhibits good behavior and is moved to community corrections as a transition before being paroled. The final method of placement of an offender into a community corrections facility is as a condition of probation under section 16–11–204(2)(c), 8A C.R.S. (1986). *See People v. Akin*, 783 P.2d 267, 268 (Colo.1989) (discussing the three types of placements). In this opinion, we will refer to the first two categories as "direct placement offenders" and "transitional offenders."

A community corrections facility is given full authority under section 17–27–103(3) to "accept, reject or reject after acceptance the placement of any offender in its community correctional facility." If an offender is accepted and then rejected, as in this case, the status of that individual is deter-

minative as to the procedures and events which follow.

Transitional offenders remain under the custody of the Department of Corrections, and thus are subject to the Department of Corrections Code of Penal Discipline. Under these rules, a transitional offender who is rejected after being accepted into a community corrections facility is returned to the Department of Corrections and may receive an evidentiary hearing at the discretion of the Department of Corrections, · "except that an inmate shall have the right to have class I offenses heard by a hearing board."[2] Colorado Department of Corrections, Code of Penal Discipline § 201-1 (1984). At the hearing, the transitional offender may represent himself or may be assisted by another inmate or staff members and is given the opportunity to present evidence. The transitional inmate is also given the opportunity to have his representative investigate the facts before the hearing. Colorado Department of Corrections, Code of Penal Discipline § 203-1, para. 7(e)(2), (g)(2)(a) (1984). However, even if the Department of Corrections hearing board finds that the person did not commit the alleged violation, the community corrections facility cannot be required to reinstate the inmate.

In *Wilson v. People*, 747 P.2d 638, we considered whether a probationer was entitled to an evidentiary hearing after he was rejected by a community corrections facility for allegedly violating the facility's rules. We interpreted section 17-27-114, 8A C.R.S. (1986), as contemplating an informal hearing before resentencing.

Wilson grounded his appeal on both sections 17-27-103 and 17-27-114, 8A C.R.S. (1986). As then in effect, section 17-27-103(3) stated:

> The corrections board may establish and enforce standards for the operation of any community correctional facilities and community correctional programs and for the conduct of offenders. The corrections board and the department or the judicial district shall establish procedures for screening offenders who are to be placed in any community correctional facility or community correctional program. Such procedures may include the use of an objective risk assessment scale to classify offenders in terms of their risk to the public. The corrections board has the authority to accept, reject, or reject after acceptance the placement of any offender in its community correctional facility or program pursuant to any contract or agreement with the department or a judicial district. If an offender is rejected by the corrections board after initial acceptance, the offender shall remain in the facility or program for a reasonable period of time pending receipt of appropriate orders from the sentencing court or the department for the transfer of such offender. The sentencing court is authorized to make appropriate orders for the transfer of such offender to the department and to resentence such offender and impose any sentence which might originally have been imposed without increasing the length of the original sentence.

Similarly, section 17-27-114 stated:

> (1) Where the administrator of a community correctional facility or any other appropriate supervising authority has cause to believe that an offender placed in a community correctional facility has violated any rule or condition of his placement in that facility or any term of his post release supervision under section 17-27-105 or cannot be safely housed in that facility, the administrator or other authority shall certify to the appropriate judicial or executive authority the facts which are the basis for his belief and execute a transfer order to any sheriff, undersheriff, deputy sheriff, police officer, or state patrol officer which authorizes such sheriff, undersheriff, deputy sheriff, police officer, or state patrol officer to transport the offender to the county jail in the county in which the facility

---

**2.** The offense of which the defendant was accused in this case did not fall within the category of class I offenses.

is located where he shall be confined pending a determination by the appropriate court or executive authorities as to whether or not the offender shall remain in community corrections. Offenders so confined may apply for bond only where they have been confined due to an alleged violation of a condition of the post release supervision contemplated by section 17–27–105.

(2) If the sentencing court determines that the offender shall not remain in community corrections, the court is authorized to make appropriate orders for the transfer of such offender from the county jail to a correctional facility and to resentence such offender and impose any sentence which might originally have been imposed without increasing the length of the original sentence.

In holding that there was a right to a hearing before revocation, we concluded that:

> The defendant was entitled to a hearing before his community corrections placement could be revoked because of an alleged violation of a rule or condition of placement. The language of section 17–27–114(1) requires the sentencing court to make a "determination" as to the existence of the alleged violation and, if the violation is established, whether an offender should remain in community corrections, rather than to remove him summarily from the program. Our resolution of this case on the basis of statutory construction makes it unnecessary to reach the issue of whether constitutional requirements of due process of law also mandate a hearing.

*Wilson*, 747 P.2d at 643.

Following our ruling in the *Wilson* case, the legislature amended both sections 17–27–103(3) and 17–27–114(2) by adding a final sentence which states: "The sentencing court is not required to provide the offender with an evidentiary hearing prior to resentencing." §§ 17–27–103(3); 17–27–114(2), 8A C.R.S. (1990 Supp.). Tape recorded hearings on these amendments indicate that the legislature passed the amendments in full awareness of our decision in

*Wilson*, and with the intent to deny probationers and direct placement offenders a mandatory hearing, notwithstanding our decision. Hearings on House Bill 1091 before the Senate Judiciary Committee (February 27, 1989). *See also Akin*, 783 P.2d at 268, n. 2.

### III.

Wilhite argues that the denial of an evidentiary hearing violates his due process and equal protection rights under the United States and Colorado Constitutions. U.S. Const. Amend. XIV; Colo. Const. Art. II, § 25. In addition, the defendant contends that the trial court erred by not allowing testimony as to the differential treatment afforded transitional offenders. We disagree.

### A.

■ First, the defendant claims that he has a liberty interest in remaining at community corrections and is therefore entitled to due process protections. In support of his contention the defendant relies principally upon *Wilson v. People*, 747 P.2d 638. As discussed above, this court held in *Wilson* that the defendant was entitled to a hearing under the language of the statute. Since our finding was based on the language of the statute, and that interpretation was rejected by the General Assembly, there is now no statutory right to a hearing.

The United States Supreme Court has held that the Constitution does not require hearings when a prisoner is transferred to more restrictive confinement unless there is some right or justifiable expectation rooted in state law that he will not be transferred except for misbehavior. *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976); *Meachum v. Fano*, 427 U.S. 215, 226, 96 S.Ct. 2532, 2539, 49 L.Ed.2d 451 (1976). Here, the defendant could have had no reasonable expectation that he would be transferred only for misbehavior because the statute very clearly gives the community corrections facility discretion to reject the defendant before or after acceptance

for any or no reason. Since the statute expressly states that the sentencing court is not required to provide the offender with an evidentiary hearing prior to resentencing, there is no right or justifiable expectation created by a state law, and the defendant's due process claim is without merit.

## B.

██ The defendant also challenges the constitutionality of the statutes on equal protection grounds and argues that the trial court erred in prohibiting him from presenting testimony relevant to this claim. His argument is that, in denying direct placement offenders an evidentiary hearing which the transitional offenders receive under the Department of Corrections rules, the statute deprives him of equal protection of the laws.

We recognize that the equal protection clause guarantees that those similarly situated will receive the same treatment by the government. *J.T. v. O'Rourke,* 651 P.2d 407, 413 (Colo.1982); J. Nowak & R. Rotunda, *Constitutional Law* 570 (4th Ed.1991). However, here we reject the defendant's claim. First, we find that the defendant has not been treated differently from the transitional offenders because he has failed to show that the transitional offenders who commit a similar offense actually are entitled to a hearing under Department of Corrections rules.

As we noted above, the Department of Corrections rules provide a discretionary, not mandatory, hearing for a transitional offender who is rejected for committing the defendant's alleged offense. As amended, the statutes applicable to the defendant do not prohibit the sentencing court from conducting an evidentiary hearing. Rather, such a hearing now is discretionary rather than mandatory. §§ 17–27–103(3); 17–27–114, 8A C.R.S. (1990 Supp.). Thus, there is no different treatment of the two groups.

Second, direct placement offenders and transitional offenders are not similarly situated for purposes of equal protection analysis. The two types of offenders are governed by different rules because transitional offenders are in the custody of the Department of Corrections and direct placement offenders are not. The method by which each group is placed in community corrections and the reasons behind such placement are distinct. Transitional offenders have been incarcerated in Department of Corrections' facilities and, through time served and good behavior, have earned their way into community corrections. Direct placements, by contrast, have been given the benefit of the doubt and have been diverted to community corrections from initial incarceration in the Department of Corrections.

Furthermore, the two groups are not similarly situated in light of the ends which an evidentiary hearing would achieve. In this context, an evidentiary hearing has a limited purpose. It cannot have the effect of overturning the decision of the community corrections facility to reject an offender. As discussed above, the statute gives sole discretion to the community corrections facility to reject an offender either before or after accepting him. *See* § 17–27–103(3), 8A C.R.S. (1990 Supp.). Thus, for the direct placement offender, the purpose of an evidentiary hearing is to assist the sentencing court in deciding where next to place the offender. *Akin,* 783 P.2d at 269 ("The sentencing court's only option is to resentence the offender, by adopting any alternative sentence which might have been imposed, including a sentence to *another* community corrections facility that agrees to accept the offender.") (emphasis in original).

In eliminating the mandatory evidentiary hearing for direct placement offenders, the legislature found that a hearing after rejection by a community corrections facility would be duplicative of the sentencing hearing. It reasoned that usually only a short period of time will have passed since the original sentencing hearing. The legislature recognized that one factor will have changed since the original sentencing hearing because rejection of a direct placement offender by a community corrections facility eliminates that placement as a sentencing option. Tape Recorded Hearings on House Bill 1091 Before the Senate Judi-

ciary Committee (February 27, 1989). Thus, the sentencing court normally will be fully apprised of its remaining sentencing options without a second hearing and the sentencing court retains jurisdiction to hold an evidentiary hearing, if necessary or appropriate.

A transitional offender is not in the same position. The hearing provided by the Department of Corrections rules is an administrative hearing, not a second court hearing. Thus, the legislative concerns which prompted the statutory amendments do not come into play. The transitional offender's sentencing hearing occurred years earlier and is of little or no relevance at this stage. It is his record of institutional behavior which is relevant to his level of confinement, various privileges and eligibility for parole. An inmate in the custody of the Department of Corrections has a strong interest in challenging any claimed misconduct. This is perhaps particularly true for an inmate who, like a transitional offender, is nearing the end of his sentence. While the Department of Corrections is not required to provide its inmates with evidentiary hearings, it is within its discretion to do so. *See Marioneaux v. Colo. State Penitentiary*, 465 F.Supp. 1245 (D.Colo. 1979).

The defendant argues that a direct placement offender has a similar interest in ensuring that he is not wrongly accused of misconduct by the community corrections facility. Any such interest, however, is much less significant than that of the transitional offender. The Department of Corrections' policy decision to provide hearings to its inmates does not invalidate the legislature's decision to deny mandatory court hearings to direct placement offenders.

■ Finally, we reject the defendant's argument that the trial court should have held an evidentiary hearing on his equal protection claim. Whether or not to admit evidence is within the sound discretion of the trial court. *People v. Lowe*, 660 P.2d 1261, 1264 (Colo.1983). In light of the foregoing discussion, we find no abuse of discretion.

## IV.

The trial court's order is affirmed. The defendant has no due process liberty interest in a hearing before he is sentenced to the Department of Corrections. There is no deprivation of equal protection of the laws and the trial court did not err in refusing to admit evidence in support of the defendant's equal protection claims.

QUINN, J., dissents.

ERICKSON and LOHR, JJ., join in the dissent.

Justice QUINN dissenting:

The issue in this case is whether the statutory scheme for community correctional placements creates a justifiable expectation, amounting to a constitutionally protected liberty interest, that an offender placed in a community correctional facility or program will not be resentenced to the Department of Corrections, and consequently subjected to a substantially more severe liberty deprivation, for allegedly violating the terms of the community corrections placement unless the offender is first accorded an evidentiary hearing on whether the alleged violation actually occurred. Because I conclude that the statutory scheme does create a justifiable expectation on the part of an offender placed in community corrections that he will be accorded an evidentiary hearing on the alleged violation prior to resentencing, I dissent.

## I.

In 1977 the General Assembly enacted a comprehensive statutory scheme for placing offenders in community correctional facilities or programs. Ch. 223, section 10, §§ 17–27–101 to 112, 1977 Colo.Sess. Laws 901, 941–47. An examination of the structure and text of the statutory scheme shows that the obvious purpose of placing an offender in a community correctional facility or program is " 'to limit confinement to the extent necessary to assure reasonable supervision while permitting a gradual reintegration of the offender into

the society to which the offender would eventually return.'" *Wilson v. People*, 747 P.2d 638, 640 (Colo.1988) (quoting *ABA Standards for Criminal Justice*, Sentencing Alternatives and Procedures, Standard 18–2.4, Commentary at 102 (1986 Supp.)).

A community correctional facility or program is defined as follows:

[A] community-based or community-oriented facility or program: Which is operated either by a unit of local government, the department [of corrections], a private nonprofit agency or organization, or any corporation, association, or labor organization; which may provide residential accommodations for offenders; and which provides programs and services to aid offenders in obtaining and holding regular employment, in enrolling in and maintaining academic courses, in participating in vocational training programs, in utilizing the resources of the community in meeting their personal and family needs and providing treatment, and in participating in whatever specialized programs exist within the community.

§ 17–27–102(1), 8A C.R.S. (1986). Community correctional facilities or programs use a variety of different approaches, including halfway houses and work release, in addressing the educational, vocational, and treatment needs of offenders placed in the facility or program by the sentencing court.

The statutory scheme authorizes the governing board of any unit of local government to establish a corrections board. § 17–27–103(2), 8A C.R.S. (1986). The corrections board is authorized to promulgate and enforce standards of operation for any community correctional facility or program, to develop procedures for screening eligible offenders, and to accept or reject the placement of any offender in a particular correctional facility or program. § 17–27–103(3), 8A C.R.S. (1990 Supp.). Although a sentencing court is expressly authorized to sentence a nonviolent misdemeanor offender to any nonresidential community correctional facility or program and to sentence a nonviolent felony offender to either a residential or nonresidential facility or program, § 17–27–105(1)(a), 8A C.R.S. (1986), a sentence to a community correctional facility or program is not final until the corrections board of the local governmental unit accepts the offender for placement in the facility or program, § 17–27–103(3), 8A C.R.S. (1990 Supp.). The General Assembly, in enacting this statutory scheme, has provided a sentencing court "with a broader range of alternatives and with a sentencing medium that is more severe than probation, but not as harsh as incarceration." *People ex rel. VanMeveren v. District Court*, 195 Colo. 34, 36, 575 P.2d 4, 6 (1978).

Once an offender has been placed in a community correctional facility or program and has been accepted by the corrections board, the offender is required to abide by all rules and conditions of the facility or program in which he has been placed. If the administrator or other supervising authority of the facility or program has cause to believe that the offender has violated "any rule or condition of his placement," the administrator or supervising authority is required to "certify to the appropriate judicial ... authority the facts which are the basis for his belief" and to order the transfer of the offender to the county jail where the offender shall be confined "pending a determination by the appropriate court ... as to whether or not the offender shall remain in community corrections." § 17–27–114(1), 8A C.R.S. (1986).

Prior to 1989, section 17–27–114(2), 8A C.R.S. (1986), stated as follows:

If the sentencing court determines that the offender shall not remain in community corrections, the court is authorized to make appropriate orders for the transfer of such offender from the county jail to a correctional facility and to resentence such offender and impose any sentence which might originally have been imposed without increasing the length of the original sentence.

In *Wilson*, 747 P.2d 638, we held that section 17–27–114 implicitly required an evidentiary hearing on an alleged violation. In reaching this conclusion, we reasoned as follows:

If the administrator could simply remove the offender from the program without establishing that there had been a violation, there would be no need to provide the sentencing court with the underlying facts. The statute further requires the court to make a determination "whether or not the offender shall remain in community corrections." This language clearly contemplates that the court will inquire into the nature of the alleged violation of a rule or condition of the offender's placement to assist it in making the requisite determination. In fact, the statute provides no other explicit criteria by which the sentencing court is to be guided in making its determination.

The "determination" required by the statute is similar to that required by the United States Supreme Court in *Morrissey v. Brewer*, 408 U.S. 471, 479–80, 92 S.Ct. 2593, 2599, 33 L.Ed.2d 484 (1972), in connection with revocation of parole:

> The first step in a revocation decision thus involves a wholly retrospective factual question: whether the parolee has in fact acted in violation of one or more conditions of his parole. Only if it is determined that the parolee did violate the conditions does the second question arise: should the parolee be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation?

Similarly, the language of section 17–27–114 seems to require consideration of both questions. The requirement for certification of facts to the sentencing court implies that the court will make a factual determination whether a rule or condition of the offender's placement has been violated. Once the factual issue has been addressed, the statute also expressly requires the court to determine whether the offender should remain in a community corrections facility or should be resentenced. Although pursuant to section 17–27–103(3), the board of the corrections facility where the offender was originally placed retains the discretion to reject the offender regardless of the outcome of the hearing, if the court determines after holding a hearing that the offender should be allowed to remain in community corrections, it can then determine whether other facilities will accept the offender.

747 P.2d at 642.

Following this court's decision in *Wilson*, the General Assembly amended both sections 17–27–103(3) and 17–27–114(2) by the addition of the following sentence: "The sentencing court is not required to provide the offender with an evidentiary hearing prior to resentencing." Ch. 149, sections 7 & 8, §§ 17–27–103 & 17–27–114, 1989 Colo. Sess. Laws 862, 864. The critical question in this case, therefore, is whether the 1989 amendment to the statutory scheme divests an offender placed in community corrections of a justifiable expectation that he will be accorded an evidentiary hearing on any alleged violation of a rule or condition of his placement prior to being resentenced to a substantially more restrictive correctional facility under the control of the Department of Corrections.

## II.

I acknowledge that the Due Process Clause of the Fourteenth Amendment does not require an evidentiary hearing in connection with the transfer of a state prisoner from one correctional facility to another, even though the transfer might be based on the prisoner's misbehavior and thus be disciplinary or punitive in nature, so long as state law does not create a justifiable expectation on the part of the prisoner "that he will not be transferred except for misbehavior or upon the occurrence of other specified events." *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976). A justifiable expectation that a sentenced defendant will not be transferred except for misbehavior, however, may arise not only by the express terms of a statutory scheme but also by implication. For example, in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), Iowa parole officials were given unfettered discretion to revoke a prisoner's parole at any time for any reason. The United States Supreme Court had no trouble in determining that the pa-

rolee had a constitutionally protected interest, whether that interest be deemed a "right" or a "privilege," in continued liberty in the absence of just cause for revocation:

The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime. The parolee has been released from prison based on an evaluation that he shows reasonable promise of being able to return to society and function as a responsible, self-reliant person. Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison. He may have been on parole for a number of years and may be living a relatively normal life at the time he is faced with revocation. The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions. In many cases, the parolee faces lengthy incarceration if his parole is revoked.

408 U.S. at 482, 92 S.Ct. at 2600–01 (footnotes omitted).

Although a defendant placed in community corrections has a range of liberty interests which lie somewhere between parole and a direct sentence to a correctional facility under the control of the Department of Corrections, the defendant's expectation to remain in the community correctional facility is different only in degree, and not in kind, from the expectation of a parolee to remain at liberty. The purpose of the community corrections placement is to reintegrate the defendant into society. Colorado's statutory scheme, for example, makes clear that the community corrections offender can work, enroll in and maintain academic courses, participate in vocational training programs, and utilize community resources in meeting personal and family needs, and seek out treatment in specialized community programs in the interest of the offender's rehabilitation. § 17–27–102(1), 8A C.R.S. (1986). Like the parolee, the defendant placed in community corrections enjoys "many of the core values of unqualified liberty" and the termination of that liberty interest inflicts a "grievous loss" on the defendant and "often on others." *Morrissey*, 408 U.S. at 482, 92 S.Ct. at 2601. The nature and extent of the community correction offender's liberty, therefore, is qualitatively different from that of a person incarcerated in a maximum or medium correctional facility under the control of the Department of Corrections. In point of fact, the revocation of the community correction placement results in a far greater loss to the offender than that endured by an incarcerated offender transferred from one correctional facility to another. *See Durso v. Rowe*, 579 F.2d 1365, 1371 (7th Cir.1978) (failure to accord prisoner a meaningful hearing prior to revoking prisoner's work-release program for allegedly violating rules of program violates due process of law).

To be sure, a community corrections offender, like a parolee, is required to abide by various rules and conditions in order to remain in the facility or program. In light of this requirement, the only sense to be made of section 17–27–114(1), which authorizes the supervising authority of the community corrections facility or program to certify to the court the facts supporting the offender's alleged violation of any rule or condition of his placement and to authorize the transfer of the offender to the county jail pending a determination by the court "as to whether or not the offender shall remain in community corrections," is to implicitly assure the community corrections offender that his placement will not be revoked and he will not be resentenced to a more restrictive correctional facility in the absence of an evidentiary hearing and judicial determination that he violated the terms of the community corrections placement. The community corrections offender's interest in community corrections placement, in my view, is of sufficient magnitude to require a due process hearing before resentencing.

### III.

In denying the community corrections offender the right to an evidentiary hearing prior to resentencing, the majority emphasizes the 1989 amendment to sections 17–27–103(3) and 17–27–114(2), which states that "[t]he sentencing court is not required to provide the offender with an evidentiary hearing prior to resentencing." The majority's reasoning appears to follow the "bitter-sweet" analysis articulated by Justice Rehnquist in *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). In that case Justice Rehnquist, joined by Chief Justice Burger and Justice Stewart, reasoned that "where the grant of a substantive right is inextricably intertwined with the limitations on the procedures which are to be employed in determining that right, a litigant in the position of appellee must take the bitter with the sweet." *Id.* at 153–54, 94 S.Ct. at 1644. This view, however, was explicitly rejected by the Supreme Court in *Vitek v. Jones*, 445 U.S. 480, 491, 100 S.Ct. 1254, 1262–63, 63 L.Ed.2d 552 (1980), where the Court noted that "minimum [procedural] requirements [are] a matter of federal law" and that "they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action." The Court reiterated the point in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985), when, speaking of a property interest, it stated:

> [I]t is settled that the "bitter with the sweet" approach misconceives the constitutional guarantee. If a clearer holding is needed, we provide it today. The point is straightforward: the Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures. The categories of substance and procedure are distinct. Were the rule otherwise, the Clause would be reduced to a mere tautology. "Property" cannot be defined by the procedures provided for its deprivation any more than can life or liberty. The right to due process "is conferred, not by legislative grace, but by constitutional guarantee. While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards." (citations omitted).

If the General Assembly may not authorize the deprivation of a property interest, once conferred, without procedural safeguards, clearly it cannot deprive a defendant of a more important liberty interest, once conferred, without an appropriate due process hearing.

Given the liberty interest at stake in this case, I would construe the 1989 statutory amendment in accordance with the basic presumption that the General Assembly intends to comply with the federal and state constitutions in enacting a statute. § 2–4–201(1), 1B C.R.S. (1980). I thus would limit the sentencing court's authority to forego an evidentiary hearing to those situations where the offender is placed in community corrections but the program or facility, due to unforeseen circumstances other than the offender's alleged misconduct, cannot adequately house the offender or place him in an effective rehabilitation program. Where, as here, the only basis for resentencing the offender is his alleged violation of a rule or condition of placement in the community corrections facility, due process of law mandates that the offender be accorded an evidentiary hearing prior to being subjected to a substantial deprivation of his liberty resulting from a resentencing to a correctional facility under the control of the Department of Corrections. I accordingly dissent.

I am authorized to say that Justice ERICKSON and Justice LOHR join in this dissent.