UNITED STATES COURT OF APPEALS

**Filed 1/14/97**

FOR THE TENTH CIRCUIT

LUBERT G. RICHARDSON,

      Plaintiff-Appellant,

v.

TRACY STEFFA; GENE
BRASSFIELD; TED SANZA; FIRST
UNKNOWN RESPONDENT;
SECOND UNKNOWN
RESPONDENT; THIRD UNKNOWN
RESPONDENT; FOURTH
UNKNOWN RESPONDENT; AND
UNKNOWN RESPONDENT; all
defendants sued in their individual
capacities and in their official
capacities,

      Defendants-Appellees.

No. 95-1447
(D.C. No. 95-S-896)
(D. Colo.)

ORDER AND JUDGMENT[*]

Before BALDOCK and BRISCOE, Circuit Judges, and LUNGSTRUM,[**] District
Judge.

---

[*]     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]     Honorable John W. Lungstrum, District Judge, United States District Court
for the District of Kansas, sitting by designation.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Plaintiff Lubert Richardson brought this action, which he asserted raised only civil rights claims, alleging injury resulting from his removal from a community corrections program and imprisonment under the custody of the Colorado Department of Corrections (DOC). The district court construed plaintiff's complaint as seeking both civil rights and habeas corpus relief. The court dismissed the civil rights claims as frivolous under 28 U.S.C. § 1915(d) and dismissed the habeas corpus claim for failure to exhaust state remedies. Plaintiff appeals. We have jurisdiction under 28 U.S.C. § 1291.

In 1993, plaintiff pleaded guilty to unlawful possession of a controlled substance and was sentenced to a term of eight years in a community corrections program. In his complaint, plaintiff stated that under the community corrections program, he was able to work in the Denver community at good jobs, travel about the community unescorted, and maintain business and social contacts. After plaintiff had been in the program for some time,[1] a program administrator allegedly learned of a threatening telephone call made by plaintiff and had him

_____

[1]     It is unclear from the record whether plaintiff resided in a program facility or elsewhere.

-2-

transferred to the custody of the county sheriff and jailed. The Denver

Community Corrections Board then rejected plaintiff from community

corrections, and plaintiff was resentenced by the state court to imprisonment

under the custody of the DOC.

Plaintiff's first three claims are closely related and essentially challenge the

constitutionality of the Colorado statutes allowing an offender to be rejected from

community corrections after acceptance and confined in a county jail, and then

allowing the court to resentence the offender to imprisonment without an

additional hearing. Under Colorado's community corrections program, Colo. Rev.

Stat. §§ 17-27-101 to 108 (1996 Cum. Supp.), "[a] community corrections board

has the authority to reject after acceptance the placement of any offender in a

community corrections program" within the board's jurisdiction. § 17-27-103(7).

Program administrators have authority to reject and terminate the placement of

any offender who violates conditions or guidelines of the program or of the

offender's placement. § 17-27-104(5). When a program administrator has "cause

to believe that an offender . . . has violated any rule or condition of such

offender's placement," the administrator may order the offender transferred to the

county sheriff, and the offender shall be held without bond. § 17-27-104(6).

Either the board or referring agency must provide an administrative review

process, § 17-27-104(5), including written notice to the offender of the decision

to reject and terminate placement and a method for informal review of the

termination and rejection, § 17-27-102(1). If an offender is rejected after acceptance in a community corrections program, "the court may resentence the offender without any further hearing so long as the offender's sentence does not exceed the sentence which was originally imposed upon the offender." § 17-27-105(e). "The sentencing court is not required to provide the offender with an evidentiary hearing pertaining to the rejection of placement in a community corrections program prior to resentencing." § 17-27-105(g).

The crux of plaintiff's claims is that he has a constitutionally protected liberty interest in not being regressed from community corrections placement to DOC custody and that this liberty interest was denied without due process. In his complaint, he stated he was rejected from the program and resentenced without any hearing or other opportunity to be heard and without assistance of counsel. He argues that the community corrections program is similar to parole and therefore subject to similar due process protections. See Morissey v. Brewer, 408 U.S. 471, 481-84 (1972).

The district court held that plaintiff's regression from community corrections to the DOC was a classification matter entrusted to prison administrators and that the constitution does not provide a right to any particular classification. See, e.g., Montayne v. Haymes, 427 U.S. 236, 242 (1976); Templeman v. Gunter, 16 F.3d 367, 369 (10th Cir. 1994). The court also found that to the extent Colo. Rev. Stat. § 17-27-103(7) created a constitutionally

protected liberty interest in remaining in community corrections, plaintiff

"appears to have received a sufficient administrative review process."  District

court's September 21, 1995 order at 6.  The court upheld the constitutionality of

the Colorado statutes on the general basis that they support the government's

strong interest in being able to classify offenders in "custodial confinement"

quickly and efficiently.  Id. at 9.[2]

Plaintiff also raised two other claims.  The district court rejected plaintiff's

conspiracy claim under 42 U.S.C. § 1985(3) on the basis that he had not alleged

he was a member of a protected class.  Plaintiff's fifth claim is that the state

breached his plea agreement, which allegedly prohibited his being sentenced to

imprisonment.  The court concluded that this was essentially a contract claim

under state law and declined to exercise its supplemental jurisdiction over this

claim.  Finally, the court found that part of the nature of the relief plaintiff

sought--to be placed again in a community corrections program--may affect the

---

[2] We note that the Colorado Supreme Court has held that the community corrections statutes do not create a liberty interest protected by due process rights. People v. Wilhite, 817 P.2d 1017, 1021-22 (Colo. 1991)("[B]ecause the statute very clearly gives the community corrections facility discretion to reject the defendant before or after acceptance for any or no reason[,] . . . there is no right or justifiable expectation [of remaining in the program] created by state law. . . ."). The court also upheld, against an equal protection challenge, a court's ability to resentence an offender after rejection without an evidentiary hearing. Id. at 1022-23. The Colorado Court of Appeals has held that despite the lack of a right to an evidentiary hearing, an offender does have a due process right to counsel on resentencing. People v. Lippoldt, 902 P.2d 852, 853 (Colo. Ct. App. 1995), appeal dismissed as moot, 915 P.2d 1334 (1996).

length of his confinement and that his sole federal remedy was therefore habeas corpus. Because plaintiff failed to allege whether he had exhausted his state remedies, the court dismissed this portion of the complaint.

In Harper v. Young, 64 F.3d 563 (10th Cir. 1995), cert. granted, 116 S. Ct. 1846 (1996), an opinion issued after the district court's ruling in this case, we examined an Oklahoma pre-parole program that bears some similarity to Colorado's community corrections program. We described the Oklahoma program as follows:

> Although remaining in the "constructive custody" of the Department of Corrections, those in the Program work and reside beyond the confines of a state penal institution and are thus free to enjoy most of the benefits of a normal existence. In return, a program participant must agree to abide by restrictions similar to those placed upon a parolee. Violation of a condition may result in termination from the Program and a return to incarceration.

Id. at 565 (footnote omitted). The petitioner in Harper had been removed from the program and reincarcerated without being granted any type of hearing. Id. at 564. He petitioned for a writ of habeas corpus on the basis that he had been denied his liberty without due process.

This court agreed that the petitioner had a liberty interest in remaining in the program, created not by any state statute, but rather one that was inherent in the constitution and thus protected by the due process clause. Id. at 566. "A liberty interest inherent in the Constitution arises when a prisoner has acquired a substantial, although conditional, freedom such that the loss of liberty entailed

[by its revocation] is a serious deprivation requiring that the [prisoner] be accorded due process." Id. (alterations in original; quotations omitted).

> [T]he dispositive characteristic that marks the point at which the Due Process Clause itself implies a liberty interest . . . is the fact of release from incarceration. The liberty associated with a life outside the walls of a penal facility dwarfs that available to an inmate. It is the freedom to be gainfully employed, to be with family and friends, and to form the other enduring attachments of normal life. It is the ability to reside in a home of one's own, without bars or fences or bonds, beyond the immediate authority of guards or wardens. The passage outside the walls of a prison does not simply alter the degree of confinement; rather, it works a fundamental change in the kind of confinement, a transformation that signals the existence of an inherent liberty interest and necessitates the full panoply of procedural protections outlined in Morrissey.

Id.,(citation and quotations omitted).

We need not address at this time whether the Colorado community corrections program is subject to the same due process protections as the Oklahoma program in Harper. For present purposes, we conclude only that the two programs are similar enough that we cannot say plaintiff's claims are based on "an indisputably meritless legal theory," Green v. Seymour, 59 F.3d 1073, 1077 (10th Cir. 1995)(quotation omitted), and subject to dismissal under § 1915(d). We therefore conclude that the district court abused its discretion, see Green, 59 F.3d at 1077, in dismissing plaintiff's civil rights claims under § 1915(d).

Plaintiff's civil rights claims necessarily implicate the legality of his rejection from community corrections and subsequent incarceration. Thus, before

-7-

plaintiff may pursue his civil rights claims, he must first obtain appropriate relief

invalidating his rejection and incarceration in a state or federal habeas corpus

proceeding. See Heck v. Humphrey, 114 S. Ct. 2364, 2372 (1994). Thus,

plaintiff's civil rights claims should be dismissed without prejudice to allow

plaintiff to first obtain the relief required by Heck.[3]

We VACATE that portion of the district court's order dismissing plaintiff's

claims under § 1915(d), and REMAND the case to the district court with

instructions to dismiss the case without prejudice.

ENTERED FOR THE COURT
PER CURIAM

---

[3] Plaintiff has already tried to challenge his rejection and incarceration
through a petition for writ of habeas corpus, but the district court dismissed the
petition because it concluded plaintiff should exhaust the state remedies available
at least for his breach-of-plea-agreement claim. Richardson v. Zavaras, No.
95-S-626, slip op. at 5-6 (D. Colo. Aug. 18, 1995). (This is similar to the
approach the court took to the portion of plaintiff's complaint in this case that it
construed as seeking habeas relief.) The court implied that because of recent
Colorado Supreme Court cases upholding the statutes governing rejection and
resentencing, exhaustion of plaintiff's challenges to these statutes and his due
process claims would be futile under Goodwin v. Oklahoma, 923 F.2d 156, 158
(10th Cir. 1991). Slip op. at 3-6. Plaintiff did not appeal this decision, and he
admits that his state court action is proceeding, albeit slowly. Appellant's Br. at
7-E.

Baldock, Circuit Judge, concurring:

Because I believe much of the court's analysis unnecessary to its resolution of this appeal, I concur in the result only. The court first concludes after lengthy analysis that the district court should not have dismissed Plaintiff's § 1983 claims as frivolous under § 1915(d). The court then concludes in one final paragraph, however, that under Heck v. Humphrey, 114 S. Ct. 2364 (1994), Plaintiff may not pursue his § 1983 claims unless and until he obtains "appropriate relief" in a habeas proceeding, because under Heck, a claim for damages based upon a conviction or sentence that has not been invalidated "is not cognizable under § 1983." Id. at 2372. I would simply say the district court should not have reached the merits of Plaintiff's § 1983 claims because under Heck, they are not yet cognizable.