The PEOPLE of the State of
Colorado, Petitioner,

v.

Markeem ABDUL, Respondent.

No. 95SC611.

Supreme Court of Colorado,
En Banc.

March 24, 1997.

Rehearing Denied April 14, 1997.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, John Daniel Dailey, Deputy Attorney General, Robert Mark Russel, First Assistant Attorney General, Sandra K. Mills, Assistant Attorney General, Criminal Enforcement Section, Denver, for Petitioner.

David F. Vela, Colorado State Public Defender, Thomas M. Van Cleave, III, Deputy State Public Defender, Denver, for Respondent.

Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari in this case to review *People v. Abdul*, No. 93CA1893 (Colo. App. July 13, 1995) (not selected for official publication), where the court of appeals held that a criminal defendant being resentenced following his termination from a direct placement at community corrections is entitled to a resentencing hearing. In reaching this conclusion, the court of appeals relied on *People v. Lippoldt*, 902 P.2d 852 (Colo.App. 1995), where another division of that court held that a direct placement offender rejected from community corrections had a due process right to representation of counsel at a resentencing hearing.

We find that *Lippoldt* is not dispositive because it concerned an offender's right to counsel when a trial court grants a discretionary resentencing hearing and did not address whether the offender was entitled to such a hearing. At the time of the offense

in this case, the statutes governing community corrections programs did not require the trial court to hold a hearing prior to resentencing a direct placement offender who had been rejected by a community corrections board. *See* §§ 17–27–103(3), –114(2), 8A C.R.S. (1992 Supp.). Our decision in *People v. Wilhite*, 817 P.2d 1017 (Colo.1991), established that a defendant has neither a constitutional nor a statutory right to an evidentiary hearing when he is resentenced after termination from community corrections. 817 P.2d at 1021–22. Consistent with *Wilhite*, we now hold that the defendant in this case had neither a constitutional nor a statutory right to a resentencing hearing after his termination from community corrections. Accordingly, we reverse the decision of the court of appeals.

I.

On January 16, 1992, Markeem Abdul (Abdul) entered a plea of guilty to one count of attempted theft.[1] On March 16, 1992, Abdul was sentenced to a term of four years in community corrections plus one year of post-release supervision. On May 21, 1992, the community corrections board (the Board) rejected Abdul from its program after initial acceptance. According to the Board, Abdul was not reporting to his employer and had failed to account for his time outside of the community corrections facility. Without conducting a hearing, the trial court reviewed the recommendation of the Board along with the original presentence report and determined that Abdul was no longer eligible for placement in community corrections. Without the presence of either Abdul or his attorney, the trial court resentenced Abdul from a term of four years in community corrections to a term of four years in the custody of the department of corrections (DOC).

Abdul subsequently filed a motion for post-conviction relief pursuant to Crim.P. 35(c). Abdul requested that the trial court vacate his amended sentence because he was denied his right to be present with legal counsel at the time of resentencing. The trial court denied Abdul's motion for post-conviction re-

1. § 18–2–101, 8B C.R.S. (1986).

lief stating that "the defendant was rejected after acceptance into the Community Corrections Program; therefore, no evidentiary hearing was required."

The court of appeals, relying on *Lippoldt* as dispositive of Abdul's claim, reversed the trial court's order. According to the court of appeals, *Lippoldt* held that "failure to allow the counselled presence of a defendant at a proceeding in which he is resentenced following termination from community corrections violates the defendant's right to due process of law." *Abdul*, No. 93CA1893, slip op. at 1–2. Thus, the court of appeals directed the trial court to conduct a hearing on the resentencing of Abdul from community corrections to the DOC.

We granted the People's petition for certiorari in *Abdul* to resolve whether the court of appeals erred in finding *People v. Lippoldt*, 902 P.2d 852 (Colo.App.1995), dispositive. Because we had also granted certiorari review of the *Lippoldt* decision, the briefing schedule for this case was held in abeyance pending the resolution of the *Lippoldt* case. However, on May 6, 1996, *Lippoldt* was dismissed as moot due to the death of the defendant. *See People v. Lippoldt*, 915 P.2d 1334 (Colo.1996). Therefore, the issues presented in *Lippoldt* remain undecided by this court.

## II.

As a preliminary matter, we must address whether the certiorari issue in this case is moot. According to Abdul's DOC records, Abdul was discharged from his sentence on March 23, 1995. Therefore, any decision by this court would have no effect on Abdul because he cannot be resentenced.

■ Generally, a case is moot when a judgment would have no practical effect upon an existing controversy. *See People v. Espinoza*, 819 P.2d 1120, 1121 (Colo.App.1991). An exception to this general rule is when an otherwise moot matter is capable of repetition, yet evading review. *See People v. Brockelman*, 933 P.2d 1315, 1318 (Colo.1997); *People v. Black*, 915 P.2d 1257, 1259 n. 1 (Colo.1996); *Massey v. People*, 736 P.2d 19, 20 (Colo.1987). Although our decision in this case will have no practical effect on Abdul, we find that the issue of whether a criminal defendant is entitled to a resentencing hearing after rejection from community corrections is an important matter capable of repetition yet evading review. Thus, we will address the issue raised by the petition and decline to dismiss the case as moot.

## III.

■ Community corrections are state-funded community-based programs run by local governmental and private agencies for both the diversion of offenders from correctional facilities and the reintegration of incarcerated offenders into society. *See People v. Wilhite*, 817 P.2d 1017, 1019 (Colo.1991); *Wilson v. People*, 747 P.2d 638, 640 (Colo. 1988). An offender can be placed in community corrections by: (1) direct placement pursuant to section 17–27–105(1)(a), 8A C.R.S. (1986); (2) transitional placement from a DOC facility pursuant to section 17–27–106(4)(a), 8A C.R.S. (1986); or (3) placement as a condition to probation pursuant to section 16–11–204(2)(c), 8A C.R.S. (1986). *See Wilhite*, 817 P.2d at 1019; *People v. Akin*, 783 P.2d 267, 268 (Colo.1989). However, pursuant to section 17–27–103(3), "a community corrections facility is given full authority to 'accept, reject, or reject after acceptance the placement of any offender in its community correctional facility.'" *Wilhite*, 817 P.2d at 1019 (quoting § 17–27–103(3), 8A C.R.S. (1986)).

In this case, Abdul was placed directly in a community corrections facility and was rejected after initial acceptance. At the time Abdul committed the offense which resulted in his conviction, the procedure for terminating the direct placement of persons in community corrections was described in sections 17–27–103(3) and 17–27–114(1) & (2), 8A C.R.S. (1992 Supp.). Section 17–27–103(3) stated in relevant part:

If an offender is rejected by the corrections board after initial acceptance, the offender shall remain in the facility or program for a reasonable period of time pending the receipt of appropriate orders from the sentencing court or the department for transfer of such offender. The

sentencing court is authorized to make appropriate orders for the transfer of such offender to the department and to resentence such offender and impose any sentence which might originally have been imposed without increasing the length of the original sentence. *The sentencing court is not required to provide the offender with an evidentiary hearing prior to resentencing.*

§ 17–27–103(3), 8A C.R.S. (1992 Supp.) (emphasis added). Section 17–27–114(1) & (2) stated in relevant part:

(1) Where the administrator of a community correctional facility ... has cause to believe that an offender ... has violated any rule of his placement in that facility ... the administrator or other authority shall certify to the appropriate judicial or executive authority the facts which are the basis for his belief and execute a transfer order ... which authorizes ... transport [of] the offender to the county jail ... pending a determination by the appropriate court or executive authorities as to whether or not the offender shall remain in community corrections.

(2) If the sentencing court determines that the offender shall not remain in community corrections, the court is authorized to make appropriate orders for the transfer of such offender from the county jail to a correction facility and to resentence such offender and impose any sentence which might originally have been imposed without increasing the length of the original sentence. *The sentencing court is not required to provide the offender with an evidentiary hearing prior to resentencing.*

§ 17–27–114(1) & (2), 8A C.R.S. (1992 Supp.) (emphasis added). The underscored language is at issue in this case.[2]

Abdul contends that, under the community corrections statute, a distinction can be drawn between an evidentiary hearing and a resentencing hearing. According to Abdul, sections 17–27–103(3) and 17–27–114(2) as quoted above preclude only evidentiary hearings and not the more informal, sentencing-type hearing. Therefore, Abdul argues that the decision of the court of appeals in this case was correct and that due process required that the trial court afford him a hearing before he was resentenced to the DOC. We disagree.

Prior to 1989, the statutory provisions reproduced above did not include the underscored language. Therefore, in 1988, we held in *Wilson v. People,* 747 P.2d 638 (Colo.1988), that section 17–27–114 required a hearing before a directly placed defendant could be terminated from a community corrections program for violation of a rule or condition. *Wilson,* 747 P.2d at 643. We pointed out that the language in section 17–27–114(1), requiring the community corrections administrator to certify the facts underlying the violation of the rule to the sentencing court and requiring the court to determine whether the offender could remain in community corrections, "contemplates that the court will inquire into the nature of the alleged violation of a rule or condition of the *offender's* placement to assist it in making the requisite determination." *Wilson,* 747 P.2d at 642. Thus, based on the language of the statute itself, we held that an offender rejected from community corrections for an alleged rule violation was entitled to an evidentiary hearing before resentencing. *See id.* at 646. We noted, however, that such a hearing was not mandated by the right to due process. *See id.* at 645.

**2.** In 1993, sections 17–27–103(3) and 17–27–114 of the community corrections statute were repealed and reenacted with amendments as § 17–27–105(1). *See* Ch. 187, sec. 1, § 17–27–105, 1993 Colo. Sess. Laws 708, 713–15. The statute now provides, in relevant part:

If an offender is rejected after acceptance by a community corrections board or a community corrections program, *the court shall promptly resentence the offender without any further hearing* so long as the offender's sentence does not

exceed the sentence which was originally imposed upon the offender.

§ 17–27–105(1)(e), 8A C.R.S. (1996 Supp.) (emphasis added). While the current statute eliminates any statutory requirement that a hearing must be held by the trial court before an offender is resentenced, the facts of this case require us to interpret the language of the statute before the 1993 amendments. We do not address the 1993 amendments in this opinion.

In response to our decision in *Wilson,* the legislature amended both section 17–27–103(3) and section 17–27–114(2) in 1989 by adding the following language to the end of each provision: "The sentencing court is *not* required to provide the offender with an evidentiary hearing prior to resentencing." Ch. 149, secs. 7 & 8, §§ 17–27–103(3), – 114(2), 1989 Colo. Sess. Laws 862, 864 (emphasis added). Subsequently, in *Wilhite,* we held that the 1989 amendments effectively extinguished the statutory right to an evidentiary hearing prior to resentencing. 817 P.2d at 1022–23.

In the present case, the court of appeals interpreted the *Lippoldt* decision as requiring a resentencing hearing, as opposed to an evidentiary hearing, for direct placement offenders upon rejection from community corrections. In *Lippoldt,* a defendant who had been rejected from community corrections was granted a resentencing hearing but denied counsel at that hearing. 902 P.2d at 852. On appeal, the *Lippoldt* court solely addressed whether a defendant was entitled to representation of counsel at a resentencing hearing. Thus, the discussion in *Lippoldt* focused on whether a resentencing hearing was a "critical stage" of a prosecution such that due process required that the defendant be represented by counsel. *See Lippoldt,* 902 P.2d at 853. The *Lippoldt* court specifically held that "while the defendant was not entitled to an evidentiary hearing prior to resentencing, ... he did have a due process right to representation of counsel at the resentencing." *Id.* As such, the court of appeals' decision in *Lippoldt* did not resolve the issue presented here, *i.e.,* whether a defendant rejected from community corrections is entitled to a non-evidentiary resentencing hearing.

*Wilhite* is controlling and requires reversal of *Abdul.* We held in *Wilhite* that an offender who is directly placed at community corrections but later rejected by the community corrections board has no right to an evidentiary hearing prior to a resentencing. 817 P.2d at 1022–23. As with Abdul, the defendant in *Wilhite* was rejected from a community corrections program after an initial acceptance. *See id.* at 1018. After being re-

jected from community corrections, the defendant in *Wilhite* moved for an evidentiary hearing, and the trial court denied the request.

On certiorari review, the defendant in *Wilhite* argued that he was entitled to the due process protections of an evidentiary hearing because he had a liberty interest in remaining at community corrections. *See id.* at 1021. We rejected this argument based on our conclusion that remaining at community corrections, as opposed to being transferred to the DOC, was not a recognized liberty interest. Referring to two United States Supreme Court cases, *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976), and *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), we pointed out that the "Supreme Court has held that the Constitution does not require hearings when a prisoner is transferred to more restrictive confinement unless there is some right or justifiable expectation rooted in state law that he will not be transferred except for misbehavior." *Wilhite,* 817 P.2d at 1021.

■ As applied to the defendant in *Wilhite,* we held that "because the statute very clearly gives the community corrections facility discretion to reject the [offender] before or after acceptance for any or no reason," an offender who was rejected by community corrections had no reasonable expectation that he would be transferred only for misbehavior. *Id.* at 1021–22. For the same reasons, Abdul does not have a due process right to a resentencing hearing.

Our reading of the *Wilhite* decision also leads us to conclude that, in this context, no distinction exists or should be made between an evidentiary hearing and a resentencing hearing. Referring to the General Assembly's intent when it enacted the 1989 amendments to sections 17–27–103(3) and 17–27–114(2), we stated in *Wilhite* that:

> In eliminating the mandatory evidentiary hearing for direct placement offenders, the legislature found that a hearing after rejection by a community corrections facility would be duplicative of the sentencing hearing. It reasoned that usually only a short period of time will have passed since

the original sentencing hearing. The legislature recognized that one factor will have changed since the original sentencing hearing because rejection of a direct placement offender by a community corrections facility eliminates that placement as a sentencing option. *Thus, the sentencing court normally will be fully apprised of its remaining sentencing options without a second hearing and the sentencing court retains jurisdiction to hold an evidentiary hearing, if necessary or appropriate.*

*Wilhite,* 817 P.2d at 1022–23 (internal citation omitted) (emphasis added).

Further review of the legislative history of the 1989 amendments supports the *Wilhite* analysis and our conclusion that the legislature intended to prevent duplication of the sentencing hearing. For example, one of the sponsors of the bill that amended the statutory language, Representative Mutzebaugh, indicated that because the trial court had already considered various sentencing options at the original sentencing hearing, there was no need to conduct another hearing to decide among the remaining options. *Hearing on H.B. 1091 Before the Senate Judiciary Committee,* 57th General Assembly, 1st Reg. Sess. (hearing tape 89–14, February 27, 1989 at 2:02 p.m.). Similarly, Donald Mielke, District Attorney for the First Judicial District, who helped develop and draft the 1989 amendments, testified that an additional hearing was unnecessary because the sentencing court would already have before it "the sentencing file, the presentencing reports, etc." *Id.* at 3:12 p.m.

■ The legislative history also indicates that the term "evidentiary" was added to distinguish the precluded hearing from the administrative hearing that the defendant may receive prior to rejection from community corrections. District Attorney Mielke testified that the inclusion of the word "evidentiary" would clear up any misperception as to whether another sentencing hearing to take evidence was necessary. *Hearing on H.B. 1091 Before the Senate Judiciary Committee,* 57th General Assembly, 1st Reg. Sess. (hearing tape 89–14, February 27, 1989 at 3:02 p.m.). Therefore, as we suggested in *Wilhite,* the legislative history of the 1989 amendments clearly supports the conclusion that the legislature intended to preclude *any* mandatory hearing by the trial court prior to resentencing a direct placement offender from community corrections to the DOC.

*Wilhite,* and not *Lippoldt,* is dispositive of the issue presented in this case. It appears to us that the *Abdul* court misinterpreted *Lippoldt.* However, to the extent that *Lippoldt* can be interpreted to *require* the trial court to hold either an evidentiary or a resentencing hearing prior to a direct placement offender's transfer from community corrections, *Lippoldt* is overruled.[3] The references to "evidentiary hearing" in *Wilhite* were not intended to create two categories of hearings. Consistent with the legislative intent, that phrase refers to any mandatory resentencing hearing.

■ We also reject Abdul's argument that to deny him a resentencing hearing restricts his right to allocution. In Colorado, the right to allocution is protected by statute and the rules of criminal procedure. Section 16–11–102(5), 8A C.R.S. (1986), and Crim. P. 32(b), both provide: "Before imposing sentence, the court shall afford the defendant an opportunity to make a statement in his own behalf, and to present any mitigation of punishment." However, in the case of a resentencing hearing after rejection from the community corrections, a defendant already has had an opportunity to make such a statement at the original sentencing hearing. Thus, when a defendant is rejected from community corrections and resentenced to the DOC, the statutory right to allocution necessarily has been satisfied. As District Attorney Mielke explained before the House Judicial Committee, defendants who are rejected from community corrections have already had a sentencing hearing and should not be given a "second bite of the apple." *Hearing on House Bill 1091 Before the House Judi-*

---

3. The facts of this case do not allow us to address whether an offender is entitled to counsel when such a hearing is granted by the trial court. Abdul had no hearing but was merely resentenced by the court. Therefore, we decline to comment on the court of appeals' resolution of the right to counsel issue in *Lippoldt.*

*ciary Committee,* 57th General Assembly, 1st Reg. Sess. (hearing tape 89–5, January 24, 1989 at 9:59 a.m.).

## IV.

For the same reasons articulated in *Wilhite* and *Wilson,* we reject Abdul's argument that due process requires a trial court to hold a resentencing hearing after an offender who was directly placed at community corrections is rejected by the Board. Because these offenders have no recognized liberty interest to remain in community corrections, the right to due process is not implicated. We also hold that the legislature's use of the term "evidentiary hearing" in sections 17–27–103 and 17–27–114 was synonymous with the term "resentencing hearing." As such, the 1989 amendatory language in the community corrections statute precluding an evidentiary hearing also precludes any mandatory resentencing hearing. Therefore, we hold that Abdul was not entitled to a hearing as of right prior to his resentencing from community corrections to the DOC. Whether to grant such a hearing is within the sound discretion of the trial court. Accordingly, the decision of the court of appeals is reversed.