The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Robert R. ROGERS, Defendant–Appellant.

No. 97CA1081.

Colorado Court of Appeals, Div. V.

March 18, 1999.

Rehearing Denied May 6, 1999.

Certiorari Granted Sept. 13, 1999.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Kim L. Montagriff, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

Robert R. Rogers, Pro Se

Opinion by Judge BRIGGS.

Defendant, Robert R. Rogers, appeals the trial court's order denying, without a hearing, his Crim. P. 35(c) motion. In the motion, he asserted, among other things, that he was entitled to an "administrative review process" before his sentence to a community corrections program could be revoked. We

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S.1998.

reverse the order and remand for further proceedings.

## I.

Defendant was charged with possession of a controlled substance and pled guilty. Instead of sentencing him to the custody of the Department of Corrections (DOC) for imprisonment, the sentencing court imposed a sentence of four years in a community corrections facility.

As a condition of his sentence to the community corrections program, defendant was required to submit to periodic drug testing by urinalysis. One of these tests was positive for the presence of cocaine metabolite, which indicated that defendant had been using cocaine. If true, he would have been in violation of the regulations imposed by the community corrections program and subject to termination from the program.

At defendant's own expense, an additional test was performed the next day. Unlike the first test, the results of this test were negative. In addition, the original urine sample was re-tested the following day. The results were again negative.

Nevertheless, a few days later, defendant's non-residential case manager wrote to defendant's probation officer. The letter stated that, because a urinalysis test was positive for cocaine metabolite, defendant was in violation of the program's regulations. He was therefore being terminated from the program. The letter indicated it had been "reviewed" by the "Executive Director of Programs."

The probation officer applied for and received a warrant to revoke defendant's direct sentence to community corrections. Defendant was then brought before the trial court and resentenced to the custody of the DOC to serve the remainder of his sentence.

## II.

Defendant contends that, before resentencing, he was entitled to review of the determination that he had violated the community correction program's regulations. He asserts that he did not receive appropriate review and the district court therefore erred when it denied his Crim. P. 35(c) motion without a hearing. In the circumstances presented here, we agree.

■ Initially, we reject defendant's contention that he had a constitutional right to an evidentiary hearing before he could be terminated from his community corrections program and resentenced to a term of imprisonment. The supreme court has determined that a defendant has no constitutionally protected interest in remaining in a community corrections program. As a result, a defendant has no constitutional right to an evidentiary hearing, or any other review, before or after termination from a program. *People v. Wilhite,* 817 P.2d 1017 (Colo.1991); *see also People v. Abdul,* 935 P.2d 4 (Colo.1997).

However, the General Assembly has amended the Community Corrections Act to provide a statutory right to an "administrative review process" when an offender placed in a community corrections program is rejected after acceptance. *See* § 17-27-101, et seq., C.R.S.1998; *People v. Benz,* 983 P.2d 117 (Colo.App. 1999). Thus, we must determine whether defendant was afforded his statutory rights.

The administrative review process can be provided by one of three entities: 1) the "referring agency," which, as here, may be the sentencing court; 2) the community corrections board, which will typically have authorized the establishment of the community correction program; or 3) the community corrections program. Sections 17-27-102 to 17-27-104, C.R.S.1998.

Pursuant to § 17-27-102(1), C.R.S.1998, "administrative review process" means:

a sequence of actions that includes *written notification to an offender* of the decision to reject and terminate program placement, a brief explanation of the reason for the termination, *instructions for the offender to request review* of the action of the community corrections board or community corrections program, and a method for the community corrections board or community corrections program to infor-

mally review the rejection and termination. (emphasis added)

■ Here, the record does not indicate that defendant received written notification of the termination decision *and* instructions informing him that he could request administrative review of the decision. The People nevertheless assert that defendant, in fact, received two administrative review processes, one at the time the case manager reported defendant's positive drug screen to his probation officer, the other during the proceedings at the resentencing hearing. We are not persuaded.

## A.

The report to defendant's probation officer, which stated that defendant was being terminated from the program because he had tested positive for cocaine metabolite, was signed by defendant's case manager. The signature is followed by a notation, "Reviewed by:," and then the signature of the "Executive Director of Programs." This report does not reflect the required administrative review, for several reasons.

When the rejection after acceptance is initiated by the community corrections program for an alleged violation of a program regulation, two steps must be taken before the offender can be resentenced to the custody of the DOC for imprisonment. First, the "administrator" of the community corrections program must make the determination that the offender has violated program regulation. Second, either the referring agency or the community corrections program must provide the offender a process for administrative review of that determination. Section 17–27–104(5), C.R.S.1998.

As to the first step, the Act does not define the term "administrator." The term must therefore be read in context and construed according to the rules of grammar and common usage. Section § 2–4–101, C.R.S.1998; *Pearson v. District Court,* 924 P.2d 512 (Colo.1996). In common usage, and as applicable in this context, "administrator" means one who administers, such as an officer appointed to govern or to superintend the affairs of a government agency. *Webster's*

*Third New International Dictionary* 28 (1986).

We initially note that the only person who appears to have actually "determined" that defendant had violated the terms of his sentence to community corrections was defendant's "non-residential case manager." While this person obviously monitored defendant's conduct in the program, nothing in the report indicates that this person was functioning as the community program administrator.

We also note that the report does not mention the negative test results obtained from the later testing and from the retesting of the original urine sample. Nothing else in the record indicates that the case manager took into consideration the later negative test results, which were available at the time the termination decision was made.

Even if we were to assume that defendant's case manager was properly functioning as the community corrections program "administrator" and considered the relevant information in making the termination decision, the community corrections program was also required to provide the separate administrative review process. The Act does not describe the structure for a community corrections program's internal review of its own administrator's determination.

Here, the case manager's written report indicates only that the Executive Director of Programs had reviewed the report. As already noted, the report does not mention the later negative test results. Nothing else in the record indicates the Executive Director reviewed, or even had knowledge of, this information when deciding whether the termination was justified. Furthermore, nothing in the record indicates that defendant "requested" such a review, *see* § 17–27–102(1), or otherwise had any knowledge of or involvement in the "review."

## B.

At the resentencing hearing, defense counsel did refer to the negative test results obtained after defendant had initially tested positive for cocaine metabolite. However, counsel mentioned the negative test results

only as a reason for considering "a reduction of the sentence, or in the alternative, that [defendant] be given credit for his time non-residential."

The court was not asked to review, and it made no finding concerning, whether it was satisfied that defendant had in fact violated the regulation prohibiting the introduction or use of narcotics. Nothing in the record indicates the court or the parties were aware of defendant's statutory right to such an administrative review.

### C.

The administrative review process may be informal and simple. Neither pre-termination notice nor an opportunity to appear and be heard is required. All that is necessary is that the offender receive: written notification of the termination decision; a brief explanation of the reason for the termination; instructions to request review; and an administrative review sufficient to permit the reviewer to be satisfied that the determination to reject the offender from the community corrections program was justified. *See* § 17–27–102(1); *People v. Benz, supra.*

Here, we need not determine which employees might properly be deemed the community corrections program "administrator." Nor is it necessary to define further the structural requirements for an administrative review process. We conclude only that the record before us fails to establish both that: 1) the community corrections program's "administrator" made the necessary determination that defendant had violated a program regulation; and 2) the administrator's determination was subject to a separate administrative review process sufficient to satisfy the reviewer that the administrator's determination was justified.

The order denying defendant's Crim. P. 35(c) motion is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Judge MARQUEZ and Judge TAUBMAN concur.