The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Richard S. BENZ, Defendant–Appellant.

No. 97CA1777.

Colorado Court of Appeals, Div. III.

Jan. 21, 1999.

Rehearing Denied Feb. 25, 1999.

Certiorari Granted Sept. 13, 1999.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Lauren A. Edelstein, Assistant Attorney General, Denver, for Plaintiff–Appellee.

Cleaver & Cleaver, Thoburn G. Cleaver, Boulder, for Defendant–Appellant.

Opinion by Judge JONES.

Defendant, Richard Benz, appeals the sentence imposed following his termination from a community corrections program. On appeal, defendant argues that he was improperly terminated from community corrections without sufficient administrative review and a finding of "cause" for his termination. We conclude that defendant was terminated for cause after receiving the informal administrative review to which he was entitled. Therefore, we affirm.

Defendant pled guilty to sexual assault on a child and was sentenced to 16 years in community corrections.

Approximately two months later, defendant was removed from community corrections and placed in custody at the county jail. Defendant's case manager at the community corrections treatment facility sent a letter to the probation department explaining that defendant had been terminated because a polygraph examination indicated he was being deceptive in answering questions concerning other offenses. The letter was signed by the program director who indicated she had reviewed the decision to "Reject After Acceptance." A second letter to the probation department from the vice-president of the corporation operating the community corrections treatment program explained that defendant posed an "unacceptable risk for community placement" because of his deceptive polygraph responses.

When defendant appeared before the court for resentencing he sought a continuance in order to gather evidence challenging the reliability of the polygraph testing procedures employed by the community corrections program. The court denied defendant's request for a continuance and resentenced him to the custody of the Department of Corrections for 12 years. After resentencing, and again in a motion to reconsider, defendant objected to the resentencing, arguing that he had been terminated from community corrections without receiving notice and an opportunity for a hearing before the community corrections board. The trial court denied defendant's motion and this appeal followed.

A "community corrections program" is a public or private "community-oriented program that provides supervision of offenders." Section 17–27–102(3), C.R.S.1998.

In *Wilson v. People*, 747 P.2d 638 (Colo. 1987), our supreme court held that, under the community corrections statutes then in effect, a probationer sentenced to community corrections was entitled to a hearing before his community corrections placement could be revoked because of an alleged violation of a rule or condition of placement. The court interpreted the statute to require the sentencing court to determine the existence of the alleged violation and further to decide, if the violation was established, whether the offender should remain in community corrections.

Thereafter, in *People v. Wilhite*, 817 P.2d 1017 (Colo.1991), the supreme court observed that the General Assembly had amended the community corrections statutes in response to *Wilson v. People, supra.* The court thus held that, under the amended statutes, a defendant had neither a constitutional nor a statutory right to an evidentiary hearing when resentenced after termination from community corrections. In reaching that conclusion, the court explained that:

> The United States Supreme Court has held that the Constitution does not require hearings when a prisoner is transferred to more restrictive confinement unless there is some right or justifiable expectation rooted in state law that he will not be transferred except for misbehavior.... Here, the defendant could have had no reasonable expectation that he would be transferred only for misbehavior because the statute very clearly gives the community corrections facility discretion to reject

the defendant before or after acceptance for any or no reason.

*People v. Wilhite, supra,* 817 P.2d at 1021–22.

In *People v. Abdul,* 935 P.2d 4 (Colo.1997), the supreme court reaffirmed *People v. Wilhite, supra,* again holding that a defendant directly sentenced to community corrections could be terminated for any reason or no reason at all. The court pointed out that the community corrections statutes had again been amended in 1993 but did not address those amendments because they were inapplicable to that defendant.

Most recently, in *Lawson v. Zavaras,* 966 P.2d 581 (Colo.1998), a *habeas corpus* case, the supreme court held that a defendant rejected after acceptance from a work-release community corrections program does not have a liberty interest in remaining in the program because the residential nature of the program is more akin to incarceration than to probation or parole. The court disposed of the petitioner's claimed due process violations "without knowing whether he exercised his right to the administrative review process" established in the 1993 amendments to the community corrections statutes. *Lawson v. Zavaras, supra,* (fn. 8).

Here, unlike in *Lawson v. Zavaras, supra,* defendant did seek to invoke the new administrative review procedures presently set forth in the community corrections statutes. Thus, it is necessary for us to determine whether, as defendant asserts, the new administrative review procedures give rise to any liberty interest subject to due process protections.

Under the present statutory framework, a defendant sentenced to community corrections who is accepted and subsequently rejected has no right to "any further hearing" in the trial court prior to resentencing. Section 17–27–105(1)(e), C.R.S.1998; *People v. Abdul, supra.* However, such a defendant does now have a very limited statutory right to administrative review of a post-acceptance termination action:

A community corrections board has the authority to reject after acceptance the placement of any offender in a community corrections program within the jurisdiction of such board. If the referring agency does not provide an administrative review process relating to such rejection after acceptance, the community corrections board shall provide an administrative review process for any offender who is rejected after acceptance by such board. The community corrections board shall provide written notification of the rejection after acceptance of any offender to the referring agency and the administrator of the community corrections program in which the offender is placed.

Section 17–27–103(7), C.R.S.1998.

"Administrative review process" is defined as:

a sequence of actions that includes written notification to an offender of the decision to reject and terminate program placement, a brief explanation of the reason for the termination, instructions for the offender to request review of the action of the community corrections board or community corrections program, and a method for the community corrections board or community corrections program to informally review the rejection and termination.

Section 17–27–102(1), C.R.S.1998.

Another statute, § 17–27–104, C.R.S.1998, outlines the circumstances in which such administrative review shall occur:

(4)(a) The administrators of each community corrections program established pursuant to this section shall establish conditions or guidelines for the conduct of offenders accepted and placed in such program. Such conditions or guidelines shall not conflict with any conditions or guidelines established pursuant to section 17–27–103(6) by the community corrections board of the jurisdiction in which such community corrections program is located. Offenders accepted and placed in any community corrections program shall have access to written copies of such conditions or guidelines for the conduct of offenders upon placement in such program.

. . . .

(5) The administrators of each community corrections program established pursuant to this section shall have the authority to reject after acceptance and terminate the placement of any offender who violates conditions or guidelines established pursuant to subsection (4) of this section, or if any conditions of such offender's placement in the program are not satisfied. If the referring agency does not provide an administrative review process, the community corrections program shall provide an administrative review process for any offender who is rejected after acceptance. If the termination of placement of an offender is initiated by the community corrections program, the referring agency shall be notified immediately to arrange a transfer of custody for such offender. The community corrections program may be required by the referring agency to maintain temporary custody of the offender whose placement is being terminated for a reasonable period of time pending receipt of appropriate transfer orders from the referring agency unless the provisions of subsection (6) of this section apply.

(6) When the administrator of a community corrections program established pursuant to this section, or any other appropriate referring agency, has cause to believe that an offender placed in a community corrections program has violated any rule or condition of such offender's placement in such program, or cannot be safely housed in such program, the administrator or other appropriate authority shall notify the appropriate judicial or executive authority of the facts which are the basis of such administrator's belief. Such administrator may then execute a transfer order to any sheriff, undersheriff, deputy sheriff, police officer, or state patrol officer which authorizes such peace officer to transport the offender to the county jail in the county in which the community corrections program is located and the offender shall be confined in such jail pending a determination by the appropriate judicial or executive authority as to whether the offender should remain in community corrections or

be removed therefrom. Such offender shall be confined without bond.

We must presume that, in enacting these amended statutes, the General Assembly was aware that, under *People v. Wilhite,* there is no constitutional requirement for a finding of "cause" prior to termination from community corrections. Thus, to the extent that the above quoted provisions of § 17–27–104 may be construed as requiring a finding of "cause" for a post-acceptance termination, the limited nature of any resulting liberty interest is demonstrated by the companion provisions which make clear that community corrections programs are vested with wide discretion in determining the grounds for termination. Likewise, the limited nature of any liberty interest is shown by the informal administrative review procedures designed to protect it.

Those informal administrative review procedures are quite simple. Under § 17–27–102(1), neither pre-termination notice nor an opportunity to appear and be heard is required. All that is necessary is that the defendant be made aware of the grounds for termination and that either the referring agency or the community corrections board "*informally* review the rejection and termination" decision. Sections 17–27–102(1) & 17–27–103(7), C.R.S. (emphasis added). Indeed, the statutes do not even prescribe any burden of proof which must be satisfied.

Here, the letters from the director and vice-president of the community corrections program set forth the reason for defendant's termination. Although the letters were not sent directly to defendant, the record demonstrates that he was made aware of the grounds for termination by the time he was resentenced.

Based on our review of the record, it appears the community corrections board did not conduct an administrative review of the community corrections program's termination decision. However, the trial court did do so in its capacity as the "referring agency" pursuant to § 17–27–102(7), C.R.S.1998, and as the "judicial authority" under § 17–27–104(6), C.R.S.1998. *See* § 17–27–102(7)(a "referring agency" is "the agency which maintains legal jurisdiction over any offender

referred to or placed in a community corrections program such as the sentencing court").

The trial court reviewed the information from the community corrections program and satisfied itself that defendant's rejection from community corrections was justified because his polygraph results indicated that he could not safely be housed there. Nothing more was necessary to satisfy the minimal administrative review requirements of § 17–27–102(1), § 17–27–103(7), and § 17–27–104(6). Accordingly, defendant's rights to due process were not violated.

The sentence is affirmed.

Judge ROTHENBERG, and Judge STERNBERG * concur.