Richard S. BENZ, Petitioner,

v.

The PEOPLE of the State of Colorado, Respondent.

No. 99SC223.

Supreme Court of Colorado, En Banc.

July 3, 2000.

---

Cleaver & Cleaver, Thoburn G. Cleaver, III, Boulder, Colorado, Ingrid J. DeFranco, Boulder, Colorado, Attorneys for Petitioner.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Alan J. Gilbert, Solicitor General, Lauren A. Edelstein, Assistant Attorney General, Appellate Division, Denver, Colorado, Attorneys for Respondent.

Justice HOBBS delivered the Opinion of the Court.

We granted certiorari in this case [1] to review the resentencing of Richard S. Benz (Benz) following his initial acceptance and subsequent rejection from a community corrections program. We hold that section 17–27–103(7), 6 C.R.S. (1999), provides for the sentencing court, as the referring agency, to conduct the administrative review process if the community corrections board or program has not done so. Here, the sentencing court provided the review contemplated by statute when it acted upon Benz's rejection from community corrections. Thus, we affirm the judgment of the court of appeals. *See People v. Benz*, 983 P.2d 117 (Colo.App.1999).

### I.

■ On April 22, 1997, Benz pled guilty to one count of Sexual Assault on a Child by a Person in a Position of Trust, *see* § 18–3–405.3, 6 C.R.S. (1999), and was sentenced to sixteen years in a community corrections facility. Following a court-ordered psychosexual evaluation, the sentencing court ordered that the defendant participate in a residential program for sex offenders, called Teaching Humane Existence (THE). At Benz's original sentencing hearing, the prosecution argued for a sentence to community corrections representing the maximum under the sexual assault on a child statute, which defines the offense as a Class 3 extraordinary risk felony.[2] The prosecution asked the sentencing court to make the conditions of compliance with THE an explicit condition of Benz's sentence, and the court so ordered.

---

1. The question for review is: "Whether the trial court has jurisdiction to re-sentence an offender rejected after acceptance from a community corrections program before the administrative review process mandated by C.R.S. §§ 17–27–103(7) and 17–27–102(1) has occurred, and may the trial court disregard the elements of administrative review required by the statute."

2. Upon rejection by community corrections, a resentencing court is limited by statute to imposition of the length of time originally imposed. *See* § 17–27–105(1)(d), 6 C.R.S. (1999).

THE's staff initially believed Benz to be cooperating in his treatment. However, two sets of polygraph results revealed the possibility that he had engaged in prohibited sexual interaction with his roommate at the facility. Furthermore, the examinations indicated a ninety-nine percent probability that Benz was widely deceptive throughout all areas of the questioning.

Prompted by the results of the polygraphs as well as Benz's other infractions of the facility's rules, THE notified the Boulder County Probation Department on July 24, 1997, of Benz's rejection from the program. In a letter to Benz's probation officer, staff wrote that the results of Benz's polygraph examinations formed the basis for their decision that Benz could not be safely contained or treated at the THE facility:

The results of Mr. Benz's polygraphy indicated to THE

a. Mr. Benz was broadly and successfully deceptive. This broad spectrum deception is categorically different from "area specific" deception which is common to most sex offenders. Moreover, this broad based deception appears to be endemic to Mr. Benz. His allegations that he was unaware he was lying to people so frequently does little to mitigate the fact that he is generally and extensively deceptive.

b. THE [was] unable to reliably discover when Mr. Benz was being truthful and when he was being deceptive, whether by design or "innocently." In short, we had failed to detect much of his deception and manipulation.

c. Due to Mr. Benz's disposition toward deception, THE would be unable to reliably uncover early signs of "lapse" or "relapse" behavior. This would prevent us from acting upon these early warning signs, thereby increasing the probability of new offenses and new victims.

The letter continued:

Community corrections, by definition, requires the offender to have contact with the community. The ability to establish a reliable containment system is quintessential to retention in our programs. The termination of Mr. Benz from our programs was predicated upon our determination we could not adequately contain Mr. Benz.

Benz appeared for a resentencing hearing in Boulder County District Court on August 14, 1998. At the resentencing hearing, Benz, through counsel, asked the court for a continuance to allow a defense polygraph expert to confer with community corrections staff in order to ascertain whether procedures followed by THE's polygraph examiner yielded reliable results for sex offenders such as Benz. The court denied the motion following consideration on the record of Benz's community corrections and psychosexual evaluations showing his high risk to the community and low capacity for treatment. The court then imposed a twelve-year sentence to the Department of Corrections.

At the end of the proceeding, Benz argued that he was not afforded the statutory review required of the community corrections board prior to his termination from the program and resentencing. The sentencing court denied Benz's motion as well as a subsequent Motion to Reconsider on the same issue.

The court of appeals affirmed the sentence to the Department of Corrections, holding that the sentencing court had performed the statutorily required review in its capacity as the "referring agency" under section 17–27–103(7). We agree and affirm the judgment of the court of appeals.

## II.

We hold that section 17–27–103(7) provides that the sentencing court, as the referring agency, may conduct the administrative review process when the community corrections board or program does not. Here, the sentencing court provided the review contemplated by statute following Benz's rejection from community corrections.

### A. Community Corrections Programs

Community corrections programs are governmental or private entities that contract with the state for the housing and treatment of lower-risk offenders. *See* § 17–

27–104, 6 C.R.S. (1999). The programs generally provide sentencing courts with the option of a "sentencing medium that is more severe than probation, but not as harsh as incarceration." *People ex rel. Van Meveren v. District Court,* 195 Colo. 34, 36, 575 P.2d 4, 6 (1978). As we noted in *Lawson v. Zavaras,* 966 P.2d 581, 585 (Colo.1998), "community corrections programs make use of a variety of different approaches in addressing the educational, vocational, and treatment needs of offenders placed in the programs." Community corrections programs therefore may incorporate both residential and non-residential options, depending upon the type of offender and the purposes and scope of the treatment. *See id.* at 585–86.

█There are three ways in which an offender may be placed in community corrections: 1) a trial court may sentence a person directly to community corrections ("direct placement offender"); 2) an offender may serve in community corrections as a condition of probation; or 3) the Department of Corrections (DOC) may refer someone to community corrections if he or she is statutorily eligible pursuant to section 17–27–105(2), 6 C.R.S. (1999) ("transitional offender"). *See People v. Wilhite,* 817 P.2d 1017, 1019 (Colo. 1991). For transitional offenders, the "referring agency," *see, e.g.,* § 17–27–103(7), is the DOC, while the sentencing court is the "referring agency" for direct placement offenders. In this case, because Benz is a direct placement offender, we address the sentencing court's role as the referring agency.

B. Rejection from Community Corrections

The legislature has frequently revised the statutory scheme regarding community corrections. Under different versions of the community corrections statutes, different procedural requirements have applied.

In *Wilson v. People,* 747 P.2d 638, 641–42 (Colo.1987), we interpreted a version of the statutes that allowed resentencing of an offender rejected by community corrections "pending a determination by the appropriate court or executive authorities as to whether or not the offender shall remain in community corrections." § 17–27–114, 8A C.R.S. (1986). Reasoning that the statutes contem-

plated the possible referral of a rejected offender to a different community corrections program, we held that implicit in the statute was the need for an evidentiary hearing on the reasons for the rejection. We articulated standards for that hearing, which included permitting the defendant to present evidence and requiring the state to prove the reason for termination from community corrections by a preponderance of the evidence. *See Wilson,* 747 P.2d at 641–43.

In 1989, in response to our decision in *Wilson,* the General Assembly revised the community corrections statutes, adding a sentence to sections 17–27–114(2) and 17–27–103(3), 8A C.R.S. (1990 Supp.). These revisions stated that "[t]he sentencing court is not required to provide the offender with an evidentiary hearing prior to resentencing." Ch. 149, secs. 7, 8, §§ 17–27–103, 17–27–114, 1989 Colo. Sess. Laws 862, 864–65; Hearings on House Bill 1091 before the Senate Judiciary Committee (February 27, 1989); *Wilhite,* 817 P.2d at 1021–23.

We reviewed a claim brought under the revised statute in *Wilhite,* 817 P.2d at 1021–22, concluding that the additional language gave the community corrections facility discretion to reject the defendant before or after acceptance for "any reason or no reason at all." We determined that the defendant's due process claim was without merit, as the statute's award of broad discretion to a community corrections board created "no right or justifiable expectation" sufficient to trigger due process protections. *Id.* at 1022. Applying the same statute, we held in *People v. Abdul,* 935 P.2d 4, 8 (1997), that the ruling in *Wilhite* regarding evidentiary hearings encompassed resentencing hearings, and a court may resentence an offender following rejection from community corrections without a hearing of any kind.

In 1993, the legislature repealed sections 17–27–103(3) and 17–27–114 of the community corrections statutes, reenacting them with amendments as section 17–27–105(1), 6 C.R.S. (1999). *See* ch. 187, sec. 1, § 17–27–105, 1993 Colo. Sess. Laws 708, 713–15. The current statute does not require the resentencing court to hold a hearing "so long as the offender's sentence does not exceed the

sentence which was originally imposed upon the offender." § 17–27–105(1)(e); *see also* § 17–27–105(1)(g) (stating, in relevant part, that "[t]he sentencing court is not required to provide the offender with an evidentiary hearing pertaining to the rejection of placement in a community corrections program prior to resentencing"). The post–1993 version of this statute and its accompanying provisions are the focus of this case.

Authority to reject an offender after acceptance is provided in sections 17–27–104(5) and (6). Subsection (5) provides, in relevant part:

> The administrators of each community corrections program established pursuant to this section shall have the authority to reject after acceptance and terminate the placement of any offender who violates conditions or guidelines established pursuant to subsection (4) of this section, or if any conditions of such offender's placement in the program are not satisfied.

Subsection (6) provides, in relevant part:

> When the administrator of a community corrections program established pursuant to this section, or any other appropriate referring agency, *has cause to believe* that an offender placed in a community corrections program has violated any rule or condition of such offender's placement in such program, or cannot be safely housed in such program, *the administrator or other appropriate authority shall notify the appropriate judicial or executive authority of the facts which are the basis of such administrator's belief.*

(Emphasis added.)

The defendant in *Abdul,* 935 P.2d at 7, argued that the emphasized language created a burden of proof for the community corrections program following rejection of an offender. In that case, we held that the language extinguishing an offender's right to a hearing demonstrated that the legislature intended to permit an offender to be rejected for "any or no reason." *Id.* at 8; *see also Wilhite,* 817 P.2d at 1021–22.

Section 17–27–103(7) addresses the rejection of an offender after he or she is accepted into a community corrections program and provides:

> A community corrections board has the authority to reject after acceptance the placement of any offender in a community corrections program within the jurisdiction of such board. *If the referring agency does not provide an administrative review process relating to such rejection after acceptance,* the community corrections board shall provide an administrative review process for any offender who is rejected after acceptance by such board. The community corrections board shall provide written notification of the rejection after acceptance of any offender to the referring agency and the administrator of the community corrections program in which the offender is placed.

(Emphasis added.) The "administrative review process" is defined in section 17–27–102(1) as:

> [A] sequence of actions that includes written notification to an offender of the decision to reject and terminate program placement, a brief explanation of the reason for the termination, instructions for the offender to request review of the action of the community corrections board or community corrections program, and a method for the community corrections board or community corrections program to informally review the rejection and termination.

Thus, when the community corrections board or program conducts the review, it is comprised of four parts: 1) written notice of rejection; 2) written notice of the reasons for rejection; 3) instructions for the offender to request review by the community corrections board or program; and 4) a method for the community corrections board or program to "informally review" the rejection.

 In interpreting statutes, a court's primary task is to give effect to the intent of the General Assembly. *See Copeland v. People,* 2 P.3d 1283, 1286 (Colo. 2000). In addition, a court should, where possible, adopt a construction that would harmonize provisions rather than create an inconsistency or conflict in the statutory scheme. *See, e.g., Avi-Comm v. Colorado Pub. Utils. Comm'n,* 955 P.2d 1023, 1031 (Colo.1998); *Colorado*

*Ground Water Comm'n v. Eagle Peak Farms, Ltd.,* 919 P.2d 212, 218 (Colo.1996).

■ Section 2–4–205, 1 C.R.S. (1999), directs that if a general provision conflicts with a more specific provision, courts are to give effect to both provisions if possible. Because the latter two portions of the "administrative review process" described in section 17–27–102(1) are specific to the community correction board or program, yet section 17–27–103(7) permits the sentencing court as the referring agency to conduct the administrative review process, we must reconcile the two provisions. We hold that where the "referring agency" responsible for conducting the administrative review is the sentencing court, the statute is satisfied when the court: 1) provides a rejected offender with written or actual notice of rejection from community corrections and the reasons for rejection; and 2) conducts an informal review based upon the community corrections board or program's notification to the court, pursuant to section 17–27–104(6), of the "facts which are the basis of such" rejection. *See also* § 17–27–103(7) ("The community corrections board shall provide written notification of the rejection after acceptance of any offender to the referring agency.").

Our reading of the community corrections statutes is that the statutes *do* provide: 1) a definition of the "administrative review process," which includes notice to the offender of rejection after acceptance and the reasons therefore; and 2) for the court, as referring agency, to conduct the informal review when the community corrections program or board does not.

The statutes *do not* provide: 1) for an evidentiary hearing upon rejection after acceptance of an offender, where that offender is sentenced to an incarceration term that is less than, or the same as, the community corrections sentence, *see* § 17–27–105(1)(d); 2) any prescribed remedies for a breach by the community corrections board or program of the procedures, or "method," *see* § 17–27–102(1), that it has adopted for informal review of a rejection; 3) any authority in the court to re-commit to community corrections an offender rejected therefrom; 4) a timeline for notification of the offender of his or her

rejection and the reasons; 5) enforcement mechanisms for a community corrections board or program's failure to comply with the administrative review statute; and 6) any substantive grounds for appeal of the community corrections board or program's decision to reject the offender.

We now proceed to review the actions of the sentencing court under the current community corrections statutes.

### C. Sentencing Court's Administrative Review

■ At oral argument, counsel for Benz argued that the sentencing court could not resentence Benz because the community corrections board had not afforded him statutory notice and administrative review. However, under section 17–27–103(7), the sentencing court has statutory authority, as the referring agency, to provide the notice of rejection and reasons for rejection to Benz, as well as the informal review, when the community corrections board or program does not do so.

Here, Benz received actual notice of his rejection from the community corrections program and the reasons underlying his rejection. The sentencing court notified Benz of the reasons for his rejection, reviewed those reasons, and concluded that: 1) Benz had violated the conditions of the program; 2) Benz was not amenable to treatment; and 3) Benz was a security risk. The record contains the following discussion by the sentencing court:

> Placing Mr. Benz on Community Corrections was always an iffy proposition because the psychosexual evaluation is really quite extraordinarily negative. And it also brings up some things which are especially concerning. One of the checklists or scales of the test, if you will, that has been found to be quite significantly predictive of the ability to respond to treatment, is the level of psychopathology that person has in addition to their proclivities toward sex offense.
>
> And Mr. Benz has one of the highest scores that I've seen, which indicates that only 19 percent of the male forensic pa-

tients, meaning people who are in prison for this kind of offense, scored higher than Mr. Benz does on the psychopathology scale . . .

The final analysis here is that although he is amenable to treatment, in that he has a weak form of denial that the evaluators felt could be broken through, that he posed a moderate to high—in most guidelines within the high range of risk—to the community, and the conclusion is that although Mr. Benz is willing to engage in treatment, that he may not be an appropriate candidate for outpatient community-based treatment because of the significance of his problems . . .

I feel under the circumstances that we have tried community-based treatment. We have tried treatment—we have tried to go forward with the process of having him evaluated and see whether there is a treatment for him in the community that is willing to work with him at the high level that he needs, that has come to a dead end.

Therefore, containment is the real issue here. If he wished to engage in treatment that is available to him [in] prison, I would be glad of that. . . . It will be the decision of the court to sentence him to 12 years in the Department of Corrections.

Thus, the sentencing court conducted the informal review process that the statute contemplates for it as the referring agency pursuant to section 17–27–103(7).[3]

The statute contemplates that the sentencing court, as the referring agency, should assure itself that written or actual notice of the rejection and reasons for the rejection were given to the offender prior to resentencing, and should perform an informal review of the facts underlying the rejection if it appears that no such review has been done by the community corrections board or program. Under sections 17–27–103(7) and 17–27–104(6), the administrator of the community corrections program or board must notify the referring agency of the facts underlying rejection of the offender. If these provisions have not been satisfied, a sentencing court may order the community corrections program or board to provide to the court "the facts which are the basis" of the community corrections administrator's "cause to believe" that an offender has violated a rule or condition of placement in community corrections or may no longer safely be housed there. § 17–27–104(6). Meanwhile, the offender remains in the county jail subject to the jurisdiction of the sentencing court. *See id.*

Here, Benz received actual notice of his rejection and of the reasons for his rejection from community corrections. Furthermore, the record demonstrates that the court, as the referring agency, conducted an informal review of Benz's rejection from community corrections. We find no error.

### III.

Accordingly, we affirm the judgment of the court of appeals.

---

**3.** We are not presented here with a case in which neither community corrections nor the sentencing court conducted the statutory administrative review process.